UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KATHY D. JONES, | ) | CIV.  06-5075-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING IN PART |
| vs. | ) | AND GRANTING IN PART |
| | ) | DEFENDANT'S MOTION FOR |
| NATIONAL AMERICAN UNIVERSITY, | ) | SUMMARY JUDGMENT |
| a division of Dlorah, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

National American University (NAU) moves for summary judgment.
Kathy Jones opposes the motion.  The motion is denied in part and granted
in part.

**FACTUAL BACKGROUND**

NAU is a division of Dlorah, Inc., a South Dakota business
corporation, and it has campuses located in Colorado, Kansas, Minnesota,
Missouri, New Mexico, and South Dakota.  NAU also offers distance learning
programs which are based out of these local campuses.  Jones began working
at NAU's Rapid City, South Dakota, campus in June 1998 as a corporate
liaison.  In October 1998, Jones became an admissions representative.

From October 2003 until February 2004, Tom Shea acted as NAU's
Director of Admissions.  In February 2004, Shea's employment with NAU was
terminated.  Consequentially, in the spring of 2004, NAU began looking for
candidates to fill the Director of Admissions position for the Rapid City

campus.[1]  At approximately the same time, NAU's distance learning program, which is also located at the Rapid City campus, completed the interview process for a similar position.  Rather than start the external hiring process from the beginning, Richard Buckles, NAU's Rapid City President, decided to post the position internally and review resumes from applicants who had applied for the distance learning position in order to determine whether there were any qualified candidates for the Director of Admissions position.

After reviewing the resumes and applications, Buckles found six potential candidates with whom he scheduled phone interviews.  In addition, one internal candidate, Jones, applied for the position.  Because Jones already worked at the Rapid City campus, Buckles determined that it was unnecessary to have her participate in the first round of phone interviews and scheduled her for an in-person interview instead.  After completing the first round of interviews, Buckles selected two candidates, Tim Schnabel and Jeff Babbe, in addition to Jones, for in-person interviews.  Each of the candidates met with the selection committee.

The committee's first choice for the Director of Admissions position was Tim Schnabel, then age 38.  At the time of his interview, Schnabel was an Admissions Coordinator for NAU's Distance Learning program and had been

---

[1] The posters were advertising the position as Director of Enrollment Management.  For purposes of consistency, the court will refer to this position as the Director of Admissions.

2

a top performer for several quarters.  Schnabel had fifteen years of management and marketing experience and the committee decided to offer him the position.  When Schnabel was offered the position, however, he declined.  The committee's second choice for the position was Jeff Babbe.  Babbe had extensive sales and management experience and the committee believed that Babbe's marketing background would be helpful to the Admissions department, but he also declined the job offer.

After the committee's top two choices turned down the Director of Admissions position, committee members met again to discuss their options regarding filling the position.  NAU alleges that the committee did not believe that the third and final candidate, Jones, was a good fit for the position, primarily because of her lack of management experience.  Jones alleges that she was the best candidate for the job with six years of experience in NAU's employ.

Shortly after making this decision, Buckles informed Jones that NAU would not be offering her the Director of Admissions position.  At no time during this conversation did Jones inform Buckles of her alleged belief that she was not offered the Director of Admissions position because of her age.  Shortly after informing Jones of NAU's decision not to offer her the position, Buckles informed the Admissions staff that the search for the new Director of Admissions had been unsuccessful and they would begin the process again.

3

At some point during the search for a new Director of Admissions, Bill Griffin (then age 57) expressed interest in the position. The committee interviewed Griffin and liked his diverse background, which included management, marketing, and sales experience. When Buckles sought input from the Admissions staff, however, they expressed opposition to the appointment of Griffin as the Interim Director of Admissions. As a result, the committee did not offer Griffin the position. The committee moved ahead with its plan to post the position externally and begin the interview process.

When it became apparent that the Director of Admissions position would remain vacant for some time, Buckles asked Jones if she would be willing to take over the majority of the responsibilities of the Director of Admissions on an interim basis, while the committee was searching for a new Director of Admissions. Jones agreed and began performing the majority of the Director of Admissions' duties in the early part of July 2004. Jones was given a temporary $500 per month increase in her salary as a result. Jones asserts that after she began as the Interim Director of Admissions, she showed Buckles a resume from an applicant for an admissions representative position. The applicant was in his mid-fifties. According to Jones, Buckles responded, "Do we really want a grandpa working with our college age students?" Buckles does not recall making this statement, but he also does not deny making it.

4

Angela Beck also applied for an admissions representative position. Buckles and Jones interviewed Beck on campus.  Jones thought that Beck was overqualified as an admissions representative because she was making substantially more money with her current employer than she would make as an admissions representative at NAU.  Nevertheless,  Buckles called Beck to offer her the position of admissions representative and she declined the offer because the position did not pay enough.  As a result, Buckles and Beck discussed her interest in interviewing for the higher paying position of Director of Admissions, and Beck informed Buckles that she believed she was qualified for the Director of Admissions position and wanted to interview for it.  Buckles arranged to have the majority of the committee interview Beck by telephone.  NAU hired Beck as the Director of Admissions and Beck began her employment with NAU on August 25, 2004.  Jones asserts that after Beck was hired, Buckles told her that she was the better choice in the short term, but Beck was the better choice in the long term.  Jones submitted her letter of resignation to Buckles on August 25, 2004.  Her last day of employment was September 8, 2004.

In the fall of 2004, Jones filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that she was discriminated against on the basis of her age because NAU did not offer the Director of Admissions position to her.  NAU responded to Jones's charge of

5

discrimination and denied the allegations.  The EEOC dismissed Jones's

charge of discrimination with a finding of no probable case and issued Jones

a right to sue letter.  As a result, on September 22, 2006, Jones filed this

action in federal court alleging age discrimination and constructive discharge.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary

judgment "shall be rendered forthwith if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.

Only disputes over facts that might affect the outcome of the case under the

governing substantive law will properly preclude summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.

Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about

a material fact is genuine, that is, if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.  Id.

The moving party bears the burden of bringing forward sufficient

evidence to establish that there are no genuine issues of material fact and

that the movant is entitled to judgment as a matter of law.  Celotex Corp. v.

Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The

nonmoving party is entitled to the benefit of all reasonable inferences to be

drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

### I.   Age Discrimination Claim

Under the Age Discrimination in Employment Act (ADEA), Jones may demonstrate age discrimination by either direct or indirect evidence.  Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1042 (8th Cir. 2007).  To be entitled to a Price Waterhouse mixed-motive analysis, Jones has the burden to establish direct evidence of age discrimination, which "refers to the causal strength of the proof."  Id. (internal quotations omitted).  If Jones's claim depends upon circumstantial, or indirect, evidence of age discrimination, the burden-shifting framework of McDonnell Douglas applies.  Id. at 1044.

### A.  Direct Evidence of Discrimination

NAU argues that Jones has not presented direct evidence of discrimination because neither of Buckles' statements constitute direct evidence of discrimination.  NAU asserts that although Buckles was a decisionmaker, his alleged "grandpa" comment was made in reference to a job applicant for a different position and not during the decisionmaking

7

process.  Further, NAU asserts that Buckles' alleged statement that Jones
may be the best candidate in the short term but Beck is the best candidate in
the long run is not direct evidence of discrimination because it is a facially
age-neutral comment.  Jones responds that she has presented direct
evidence of discrimination based upon her age.  Jones argues that Buckles'
"grandpa" statement illustrates his animus towards aging applicants.  Jones
argues that because such a statement was made by the decisionmaker
directly about the hiring decision process during the time frame when
Buckles hired Beck and rejected Jones, it is not credible that Buckles'
negative attitude towards aging applicants did not exist.  Jones also argues
that the additional comment by Buckles about Jones being the better choice
in the short term and Beck being the better choice in the long term
corroborates his "grandpa" comment that age played a factor in the hiring
decision.

"[D]irect evidence is evidence 'showing a specific link between the
alleged discriminatory animus and the challenged decision, sufficient to
support a finding by a reasonable fact finder that an illegitimate criterion
actually motivated' the adverse employment action."  Griffith v. City of Des
Moines, 387 F.3d 733, 736 (8th Cir. 2004).  In this context, whether evidence
is direct depends on its causal strength.  Id.  As such, this category of proof
"includes evidence of conduct or statements by persons involved in the

decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 966 (8th Cir. 2006) (internal quotations omitted).  But "direct evidence does not include stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself." Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 635 (8th Cir. 1998) (internal quotations omitted).

Viewing the facts in the light most favorable to the nonmoving party, Jones, the court must assume Buckles made the two alleged comments.  But Buckles' two comments are not direct evidence of age discrimination. Although Buckles was a decisionmaker, Jones has not demonstrated a specific link between the two comments and her failure to be hired as the Director of Admissions.  Buckles' "grandpa" comment was made in reference to a job applicant for an entirely different position and, therefore, is not directly connected to the employment decision involved in this litigation.  See Ramlet v. E.F. Johnson Co., 507 F.3d 1149, 1153 (8th Cir. 2007) (determining that the plaintiff had not presented direct evidence of discrimination because he had "not demonstrated a specific link between the comments and his termination").  Further, Buckles' short term/long term comment does not

specifically mention age and does not contain language directly associated with age.  See Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989) (stating that "courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination").  Accordingly, the court concludes that Jones has failed to present direct evidence of age discrimination.  Therefore, Price Waterhouse review is not warranted, and the court will review Jones's claims under the analysis set forth in McDonnell Douglas.

## B.  Indirect Evidence of Discrimination

Under the McDonnell Douglas burden-shifting analysis, a plaintiff must first establish a prima facie case of age discrimination.  If a prima facie case is made, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge.  If the employer meets that burden, the plaintiff must then demonstrate that the proffered reason is pretext for unlawful discrimination.  Chambers v. Metro Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003).

### 1.  Jones's Prima Facie Case

To avoid summary judgment in this case, the plaintiff must establish a prima facie case by producing evidence that: (1) she was over the age of forty and therefore a member of a statutorily protected class; (2) she was qualified for the position, (3) she was not promoted, and (4) the employer hired a

10

younger individual to fill the position.  Id. at 856.  Here, Jones satisfies all four elements.  She was fifty-six at the time NAU rejected her application for the Director of Admissions position and she possessed the proper qualifications to be considered for the position.  She was not hired for the position but Beck, who was thirty-five years old, was hired for the position.

### 2.   NAU's Legitimate, Nondiscriminatory Reasons

Because Jones has established a prima facie case of age discrimination, NAU has the burden of explaining its actions with legitimate, nondiscriminatory reasons.  NAU argues that it did not select Jones for the Director of Admissions position because Beck had an impressive sales and management background and expressed innovative ideas on how to improve recruitment and retention.  NAU explains that Beck was more qualified or better-suited for the position than Jones.  NAU also argues that the fact that Jones received moderate to low performance reviews and had been put on two performance improvement plans is a legitimate nondiscriminatory reason for deciding not to promote her.  Jones responds that she worked hard, performed her job well, and received multiple awards during her six years of employment with NAU; that management was not listed as a criteria in the job posting; and that Beck's previous jobs did not include the job posting requirement of three years minimum of higher education admissions experience.  As a result, Jones argues that there is not credible evidence that

her lack of management experience or vision or her poor performance were legitimate reasons for her not getting the job.

With respect to NAU's burden, the Eighth Circuit has explained the standard for rebuttal of a plaintiff's prima facie case as follows:

> This burden is not onerous, and the explanation need not be demonstrated by a preponderance.  The defendant need not persuade the court that it was actually motivated by the proffered reasons.  Rather, it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against plaintiff that would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.  If the defendant offers a facially nondiscriminatory explanation, regardless of its persuasiveness, the presumption in plaintiff's favor evaporates and it is left for the trier of fact to determine whether the plaintiff has proven that the defendant's action was motivated by discrimination.

McCullough v. Real Foods, Inc., 140 F.3d 1123, 1127 (8th Cir. 1998), quoting Buchhotz v. Rockwell Int'l Corp., 120 F.3d 146, 150 (8th Cir. 1997) (citations and internal quotations omitted).  Here, NAU has specifically stated legitimate nondiscriminatory reasons for not placing Jones in the Director of Admissions position.  Further, NAU has produced documents supporting its alleged reasons for not choosing Jones to fill the Director of Admissions position.  Accordingly, under the standard set forth by the Eighth Circuit, the court finds that NAU has met its burden by setting forth a legitimate nondiscriminatory reason for not promoting Jones to the Director of Admissions position.

### 3. **Evidence of Pretext**

Once an employer articulates a lawful reason for a decision, it is not the province of the court to decide whether the decision was "wise, fair or even correct," so long as it was not pretext for illegal discrimination.  Wilking v. County of Ramsey, 153 F.3d 869, 873 (8th Cir, 1998) (internal quotations omitted).  Specifically, Jones must present evidence sufficient to "(1) raise a question of fact as to whether [NAU's] proffered reason was pretextual *and* (2) create a reasonable inference that age was a determinative factor" in the employment decision.  Erickson v. Farmland Indus., Inc., 271 F.3d 718, 726 (8th Cir. 2001).  In other words, Jones must establish that NAU's justification "is unworthy of credence."  Id.  When an employer contends that the person selected for a position was more qualified than the plaintiff, the qualifications should be compared to determine whether the employer's proffered reason for its employment decision is believable.  Chambers, 351 F.3d at 857.  "If this comparison successfully challenges the employer's articulated reason for the employment decision, it might serve to support a reasonable inference of discrimination."  Id.

Viewing the facts in the light most favorable to the nonmoving party, Jones, the court finds that a question of fact exists as to whether NAU's proffered reasons that it hired Beck instead of Jones for the position of Director of Admissions were pretextual.  The parties have each provided what

13

they contend is the job posting for the position of Director of Admissions. The document provided by Jones indicates that a minimum of 3 years post-secondary recruiting experience is **required** for the position (Docket 46-2). The document produced by NAU indicates that 3 years of post-secondary recruiting experience is **preferred**. (Docket 42-6). Jones meets the 3-year requirement and Beck does not. Neither job posting lists prior experience as a manager as a minimum requirement for the job. Thus, a question of fact exists as to whether Beck meets the minimum requirements for the position. Viewing the evidence in the light most favorable to Jones, Jones meets the minimum requirement of three years of post-secondary recruiting experience and Beck does not. Thus, Jones is more qualified for the position than Beck. As a result, a reasonable inference of discrimination could be drawn by the jury. A jury question exists as to what constitutes the job posting and whether NAU's articulated reason for its employment decision is merely a pretext. Accordingly, the court finds that summary judgment is not appropriate on Jones's age discrimination claim.

## II.     **Constructive Discharge Claim**

To show "constructive discharge, a plaintiff must show more than just a Title VII violation by her employer." Phillips v. Taco Bell Corp., 156 F.3d 884, 890 (8th Cir. 1998). "A constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee

to quit.  Johnson v. Runyon, 137 F.3d 1081, 1083 (8th Cir. 1998).  "To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit.  Summit v. S-B Power Tool, 121 F.3d 416, 421 (8th Cir. 1997).  The intent element is satisfied by a demonstration that quitting was "a reasonably foreseeable consequence of the employer's discriminatory actions."  Id.  The employee has an obligation to act reasonably by not assuming the worst and not jumping to conclusions too quickly.  Id.  Also, "[a]n employee who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged."  Id.

The court finds that Jones has failed to set forth sufficient evidence to prove her constructive discharge claim.  Losing a single promotional opportunity is not a sufficient reason to quit or to constitute constructive discharge.  See id. at 421.  Further, because Jones never informed NAU that she believed she was being discriminated against because of her age during her employment, NAU did not have a reasonable chance to resolve Jones's problem.  Accordingly, the court finds that the facts alleged in this case, even when viewed in the light most favorable to Jones, are not so intolerable that a reasonable person would be forced to quit.  As such, the court finds that

15

summary judgment is proper on Jones's constructive discharge claim.

Therefore, it is hereby

ORDERED that NAU's motion for summary judgment (Docket 41) is

denied in part and granted in part.

Dated May 8, 2008.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

16