UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KATHY D. JONES, | ) | CIV. 06-5075-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING IN PART |
| | ) | AND DENYING IN PART |
| NATIONAL AMERICAN UNIVERSITY, | ) | DEFENDANT'S MOTION TO |
| a division of Dlorah, Inc., | ) | CORRECT THE RECORD |
| | ) | |
| Defendant. | ) | |

Defendant, National American University (NAU), moves to correct the record and requests that the court provide the parties with copies of the tape recordings of the trial. Plaintiff, Kathy Jones, has no objections to making the record accurately reflect what occurred at trial. The motion is granted in part and denied in part.

**FACTUAL BACKGROUND**

On May 25, 2007, Jones filed an amended complaint alleging that NAU discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act. Docket 31. NAU denied all of Jones's allegations and alleged that it chose not to hire Jones for non-discriminatory reasons. Docket 33. A trial commenced on November 12, 2008, and lasted for four days, ending on November 17, 2008. During the trial, Judy Thompson, an official court reporter who was hired by the court, was present and took down everything that was said in the courtroom in a type of

shorthand. She later prepared a transcript of the trial based upon her shorthand notes and filed it with the court.

## DISCUSSION

**I.    Request for Trial Recordings**

NAU requests that the court provide the parties with copies of the tape recordings from the trial so that it can hire an independent court reporter to transcribe the recordings of the trial proceedings. NAU further requests an opportunity to provide further briefing to the court to correct the record if there are inaccuracies in the first transcript which impact any post-trial motions.

28 U.S.C. § 753(b) provides, in pertinent part, that "[e]ach session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method, subject to regulations promulgated by the Judicial Conference and subject to the discretion and approval of the judge." According to the plain language of the Act, electronic sound recordings are not required to be prepared when another official method of recording is used.

Here, the trial was officially recorded verbatim by shorthand by a court reporter hired by the court. The court reporter followed her usual procedure by using a stenotype to document all statements made during the trial. She

later transcribed her notes into the trial transcript and filed it with the court. The court finds this transcript is the official record of the trial. The court also utilized the For The Record (FTR) recording system during the trial, which is a digital recording made during court proceedings when a court reporter is not available or necessary. See http://fortherecord.com. But because the court reporter produced the official record in this case, the court finds that FTR was a back up recording device for court use only. See <u>Emmel v. Coca-Cola Bottling Co. of Chicago, Inc.</u>, 904 F. Supp. 723, 752 (N.D. Ill. 1995). As a result, neither party is entitled to a copy of the FTR recording.

## II. Motion to Correct Record

NAU states that it has identified several portions of the trial transcript that are inconsistent with its recollection of the trial proceedings. NAU lists five potential inaccuracies, but notes that it is not a complete list. Jones does not object to the record being corrected to ensure accuracy of the trial transcript.

Under Fed. R. Civ. P. 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other the part of the record." The rule further provides that "[t]he court may do so on motion or on its own, with or without notice." Additionally, Federal Rule of Appellate Procedure 10(e)(1) mandates that "[i]f any difference arises about whether the record truly discloses what occurred

3

in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." Pursuant to these rules, the court finds that it has the ability to resolve the disputes about the trial transcript currently before it.

### A.  Exhibit 2

The transcript indicates that Jones's counsel, Jon LaFleur, asked Dr. Richard Buckles questions relating to Exhibit 2, which was the one-page document titled "Position Available." The transcript further indicates that LaFleur offered Exhibit 2, NAU objected based on lack of foundation, and the court sustained the objection. The transcript does not indicate that LaFleur tried to offer Exhibit 2 a second time during Dr. Buckles' testimony. Transcript at 110-114. NAU submits that LaFleur did offer Exhibit 2 a second time during Dr. Buckles' testimony, that it objected based on lack of foundation, and that the court sustained its second objection.

The court finds that the transcript is consistent with the unofficial recording of the trial and its trial notes. LeFleur never tried to offer Exhibit 2 a second time during Dr. Buckles' testimony. Instead, after Exhibit 2 was not received into evidence, LeFleur asked Dr. Buckles whether he was reluctant to authenticate Exhibit 2 because it stated that a job requirement for the Director of Admissions position was three years of admissions experience. Counsel for NAU objected to this question based on the fact that

4

Exhibit 2 was not admitted into evidence and that LeFleur was asking Dr. Buckles to read from the document. The court overruled NAU's objection and Dr. Buckles responded. See also Transcript at 113. Accordingly, the court finds that the record is accurate in its representation that LeFleur only offered Exhibit 2 once during Dr. Buckles' testimony and that the transcript in this regard should not be altered in any manner.

### B. Exhibit 38

The transcript indicates that with regard to Exhibit 38, which was NAU's Employee Handbook, the court specifically asked, "Ms. Nash, are you claiming this is a true and correct copy of the employee handbook February of 1998?" Nash responded, "No, I am not, Your Honor." Transcript at 374. After reviewing the unofficial recording and trial notes, the court finds that the transcript fails to include the word "isn't" within the court's question but that the transcript accurately reflects Nash's response to the court's question. Therefore, the transcript should be changed to reflect that the court asked: "Ms. Nash, are you claiming this isn't a true and correct copy of the employee handbook from February of 1998?"

### C. Angela Beck's Affidavit

The transcript indicates that NAU's counsel, Kathryn Nash, read the affidavit of Angela Beck. Transcript at 572. After reviewing the unofficial

5

recording and its notes from the trial, the court finds that Carole[1] read Angela Beck's affidavit to the jury. NAU called Angela Beck as a witness and explained that it had someone that was going to read Beck's affidavit because Beck was unable to be present at the trial. Counsel for NAU explained that the person reading the affidavit was not Beck but was Carole. Accordingly, the transcript should be corrected to show that Carole, not Nash, read Beck's affidavit.

**D. Jury Instruction 7**

The transcript indicates that LaFleur objected to jury instruction number 7, which related to actual damages. LaFleur stated that he did not think there was any evidence that Jones failed to mitigate her damages. Nash responded to LaFleur's objection, arguing that Jones's testimony that she stopped looking for further work after she got her job is evidence of a failure to mitigate. Transcript at 644. The transcript further indicated that the court stated

> Defendant both failed to mitigate and put on evidence through the cross-examination of the plaintiff. If the jury believes that evidence, there would be evidence there for them to support the fact that she failed to mitigate her damages. But that's a question of fact for the jury to determine. So I am going to overrule the objection of the plaintiff.

---

[1]According to the unofficial recording and the court's notes, counsel for NAU never revealed Carole's last name. Rather, counsel for NAU just stated that "Carole" would read Beck's affidavit

6

Id. at 645. After consulting the unofficial recording and trial notes, the court finds that the first sentence of the court's above quoted comment is inconsistent with what was actually said at trial. The transcript should be corrected to indicate that the court stated, "Defendant both pled failure to mitigate and put on evidence through the cross-examination of the plaintiff." The rest of the court's comment is consistent with what was said at trial and thus, will not be changed.

### E. Closing Argument

The transcript indicates that in his closing argument LaFleur recited a poem from Shel Silverstein, who is a children's poet and author. The transcript provides that Mr. LaFleur stated

> Said the little boy, "I drop my spoon sometimes." Said the old man, "I do too." Whispered the little boy, "I wet my pants." The old man laughed, "I do too." Said the little boy, "I often cry." Nodded the old man, "me too." "But worse of all," said the little boy, "many times grownups don't pay attention to me." And he felt the warmth of an old wrinkled hand. "I know what you mean," said the old man.

Transcript at 695. After conferring with the unofficial recording and notes made by the court during the trial, the court finds that LaFleur did make a comment about forgetting the poem while he was reciting it. The transcript should be amended to reflect the following:

> Said the little boy, "I drop my spoon sometimes." Said the old man, "I do too." Whispered the little boy, "I wet my pants." The old man laughed, "I do too." Said the little boy, um, oops there I need my notes, sorry about that "I often cry." Nodded the old

7

man, "me too." "But worse of all," said the little boy, "many times grownups don't pay attention to me." And he felt the warmth of an old wrinkled hand. "I know what you mean," said the old man.

Although the court finds that the transcript needs to be corrected in four areas consistent with this opinion, the court notes that it is significant that NAU has yet to point out an inconsistency that may affect the outcome of any post-trial motions or appeal. Such inconsistencies are trivial and do not rise to the level of demonstrating that the transcript does not accurately reflect the important and relevant statements and events of the trial.

### III.   Additional Alleged Inconsistencies

NAU suggests that there are other inconsistencies in the transcript but did not specifically enumerate them in its motion. NAU is instructed to bring these specific alleged inconsistencies to the attention of Jones and the court reporter in an attempt to resolve them. In the event NAU, Jones, and the court reporter cannot resolve the transcript issues, NAU is to file another motion and the court will make a determination regarding the record. If the parties believe that any changes that are made may affect the outcome of any post-trial motions, the parties may submit supplements to their previously filed briefs.

Accordingly, it is hereby

ORDERED that NAU's motion to correct the record (Docket 173) is granted in part and denied in part.

IT IS FURTHER ORDERED that the transcript of the trial shall be corrected consistent with this opinion.

IT IS FURTHER ORDERED that if the court is required to make determinations with regard to the record, NAU must file a motion specifically indicating all the alleged inaccuracies in the record that it was unable to resolve with Jones and the court reporter by **April 15, 2009**.

IT IS FURTHER ORDERED that if the parties wish to supplement their previously filed motions or briefs based upon the conclusions reached either in consultation with the court reporter or by the court, those supplements are due by **April 20, 2009**.

Dated April 4, 2009.

BY THE COURT:

/s/ **Karen E. Schreier**
KAREN E. SCHREIER
CHIEF JUDGE